UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LISA A. BIRON,<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN HAWK SAWYER, et al.,<br><br>Defendants. | Civil No. 19-CV-2938 (SRN/LIB) |

DECLARATION OF NANETTE BARNES

I, Nanette Barnes, do hereby declare and state as follows:

1. I am currently employed by the United States Department of Justice (DOJ), Federal Bureau of Prisons (BOP), as the Warden at the Federal Correctional Institution in Waseca, Minnesota. I have been employed in this capacity since October 2017, and I have been employed with the Bureau of Prisons since March 1990.

2. As part of my official duties, I have access to records maintained in the ordinary course of business by the Bureau, including information maintained in the SENTRY[1] database, inmate Central Files, and other official inmate files and records.

3. I am familiar with inmate Lisa Biron, Federal Register No. 12775-049, the plaintiff in this litigation, as she is incarcerated at FCI Waseca. Biron is serving a 480-month term of imprisonment for (1) Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C §§ 2423(a) and 2427; (2) Sexual Exploitation of Children, in violation of 18 U.S.C. §§ 2251(a) and 2256; and (3) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). See Public Information Inmate

---

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, participation in programs, administrative remedies, and discipline history.

1

Data as of 01-03-2020, for Lisa Biron, Register No. 12775-049, a true and correct copy of which is attached as Exhibit A to this declaration. She has a projected release date of June 17, 2047, via a good conduct time release. See Exhibit A at 1.

4. I have been advised Biron is challenging my decision to preclude her from communicating with her daughter, R.B., who also was the victim in her criminal case, after R.B. requested the communication in October 2019.

5. As Warden of FCI Waseca, I am vested with discretion to determine who inmates may communicate with in the community.

6. Wardens may place an inmate on restricted general correspondence as a matter of classification. See Program Statement 5265.14, Correspondence, p. 10, a true and correct copy of which is attached as Exhibit B to this declaration. Factors Wardens may consider in doing so are as follows:

> (1) Involvement in any of the activities listed in [28 C.F.R.] § 540.14(d);
> (2) Attempting to solicit funds or items (e.g., samples), or subscribing to a publication without paying for the subscription;
> (3) Being a security risk;
> (4) Threatening a government official; or
> (5) Having committed an offense involving the mail.

See Exhibit B at 11. Section 540.14(d) permits the Warden to reject correspondence sent by an inmate "if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity. See Exhibit B at 9.

7. Wardens have similar discretion to limit inmates' telephone use when "necessary to ensure the security or good order, including discipline, of the institution or to protect the public." See Program Statement 5264.08, Inmate Telephone Regulations, at 1, a true and correct copy of which is attached as Exhibit C to this declaration.

2

8. FCI Waseca houses inmates who have been convicted of sex offenses related to their children. Ordinarily, these perpetrator-inmates are precluded as an exercise of my discretion under policy from having contact with their victim-children in order to protect the victim from being re-victimized. If a victim-child or their guardian contacts the institution and requests communication with the perpetrator-inmate, I will ask the inmate's Unit Manager to investigate whether any court has addressed the status of contact between the perpetrator-inmate and victim-child. If courts have been silent on the issue, I will approve the communication based on the victim-child's request. However, if a sentencing court or family court has spoken on the issue, I will follow the lead of that court as it was in the best position to balance the interests of the victim-child and perpetrator-inmate. For example, if a sentencing court has prohibited contact between the perpetrator-inmate and victim-child as a condition of supervised release, I will implement that no-contact order during incarceration. Or, if a family court indicates contact between the victim-child and perpetrator-inmate should be determined by an independent party, I will permit contact to the extent requested by that party. I follow these procedures in order to be fair and consistent in my application of contact restrictions between inmate-perpetrators and their victim-children.

9. As part of Biron's Judgment in a Criminal Case, her sentencing court imposed the following Special Condition of Supervision: "The defendant may not directly or indirectly contact the victim or any child under age 18; and, may not loiter within 100 yards of any school yard, playground, swimming pool, arcade, or other such place frequented by children." See Judgment in a Criminal Case, Doc. No. 46, United States v. Lisa Biron, No. 12-CR-140-01-PB (D.N.H.), at 3, a true and correct copy of which is

3

attached as Exhibit D to this declaration. Although this Special Condition applies during Biron's supervised release, the sentencing court's imposition of the condition is persuasive to me regarding the need to protect R.B. from contact by Biron.

10. On March 25, 2019, I re-approved a prior restriction prohibiting Biron from communicating with her daughter-victim, R.B. See Restricted Correspondence Notification, dated March 25, 2019, a true and correct copy of which is attached as Exhibit E to this declaration. I determined because R.B. was Biron's victim and the sentencing court believed contact between R.B. and Biron should be prohibited during Biron's supervised release, the prohibition was necessary to protect R.B. while Biron was incarcerated.

11. On October 31, 2019, I received correspondence from R.B. requesting contact with her mother. See Correspondence from R.B., a true and correct copy of which is attached as Exhibit F to this declaration. R.B. indicated she was now 21 years of age. See id. at 3.

12. R.B.'s request to communicate indicated she no longer wanted to be protected from contact by Biron, but the Special Condition of Supervision remained. The Special Condition could be interpreted as either prohibiting Biron from contacting the victim or other minors while under the age of 18 or as prohibiting Biron from all contact with the victim regardless of the victim's age. I therefore asked my staff to seek clarification from the sentencing court before making a final decision regarding communication between Biron and R.B. I was advised the U.S. Probation Office spoke with the sentencing court, and the sentencing court intended the Special Condition to apply regardless of R.B.'s age. I was also advised Biron would need to file a motion with the court if she wanted the Special Condition to be modified.

13. Because the sentencing court intended to restrict Biron's supervised release contact with R.B. regardless of R.B.'s age, the Special Condition continued to be persuasive to me regarding the continuing need to protect R.B. from contact by Biron. On November 20, 2019, I again approved a restriction prohibiting Biron from communicating with her daughter-victim, R.B. Biron was advised of my decision and willingness to reconsider if the Special Condition was modified. See Restricted Correspondence Notification, dated November 20, 2019, a true and correct copy of which is attached as Exhibit G to this declaration.

14. Accommodating Biron's request to communicate with R.B. would increase the burden on my staff to monitor the communications. Under Program Statement 5265.14, Correspondence, staff will read incoming correspondence "as frequently as deemed necessary to maintain security or monitor a particular problem confronting an inmate." See Exhibit B at at 8. Outgoing correspondence can be read if "there is reason to believe . . . it would be threatening to the recipient." Id.

15. Currently, FCI Waseca houses approximately 675 inmates. On any given day, inmates send out approximately 200 to 250 items of correspondence; inmates receive approximately 300 to 1,000 items of correspondence, including newspapers and magazines and depending on the time of year. Right now, the Bureau as a whole, and FCI Waseca specifically, is experiencing an increase in the introduction of narcotics through correspondence procedures. If Biron is allowed to correspond with R.B., I will need to divert staff from reviewing correspondence for criminal activity, such as plans to introduce and the introduction of narcotics, to review the correspondence to ensure Biron is not continuing her victimization of R.B.

16. Further, regarding telephone communication between Biron and R.B., all inmate telephone calls are monitored to "preserve the security and orderly management of the institution and to protect the public." See Exhibit C at 10.

17. On any given day, inmates make approximately 350 to 600 telephone calls, ranging from approximately 2800 to 4500 minutes of telephone conversation. Monitoring of the telephone calls is staff intensive because the entire telephone call must be listened to; often, calls are monitored after completion. If calls between Biron and R.B. were monitored after completion and staff discovered victimization of R.B. during the call, it would be too late to prevent harm to R.B. Live monitoring of the call would similarly leave open the potential of harm to R.B.; termination of the call would only come after Biron had already begun to harm R.B.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 31 day of January 2020

Nanette Barnes
Warden
Federal Correctional Institution
Waseca, Minnesota