

**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:            CPD/CPB
NUMBER:      5265.14
DATE:          April 5, 2011

# Correspondence

/s/
*Approved*: Harley G. Lappin
Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE**

**§ 540.10 Purpose and scope.**

**The Bureau of Prisons encourages correspondence that is directed to socially useful goals.  The Warden shall establish correspondence procedures for inmates in each institution, as authorized and suggested in this rule.**

Institution guidelines concerning correspondence will be made widely available to staff and inmates through posting on bulletin boards, placement in the institution library, or other appropriate means.

a.  **Summary of Changes**

*Policy Rescinded*
P5265.11        Correspondence (7/9/99)

This edition of the Program Statement incorporates changes that have occurred since its last publication and initiatives resulting from the Reduction and Elimination of Duties Management Assessment Project (REDMAP):

■    Now requires that funds intended for an inmate's commissary account will be mailed by the sender directly to the centralized commissary account center.
■    Eliminates outgoing special/legal mail drop-boxes.

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

EXHIBIT
B

- Institutions with a TRULINCS-generated mailing label system will ensure inmates use the mailing labels on all outgoing correspondence.
- Eliminates requirement to obtain subsequent authorization for inmates' with prior approval to correspond with immediate family members or co-defendants housed in a federal or non-federal facility.

b. **Program Objectives.**  Expected results of this program are:

- Inmates will be able to send and receive correspondence per established procedures.
- Incoming and outgoing general correspondence will be subject to monitoring, reading, and inspection.
- Restrictions on general correspondence will be enforced for an inmate because of misconduct or for classification purposes.
- Incoming correspondence deemed inappropriate will be rejected.
- An inmate without funds will be provided a limited amount of postage stamps and mailing materials.
- An inmate will be permitted to possess a limited quantity of postage stamps.
- An inmate will be permitted to receive funds through the mail.

c. **Pretrial, Holdover, and Detainee Inmates.**  Specific sections of this Program Statement pertain to either designated inmates or inmates in pretrial, detainee, or holdover status.

2. **DEFINITIONS**

**§ 540.2 Definitions.**

**(a)  *General correspondence* means incoming or outgoing correspondence other than *special mail.  General correspondence* includes packages sent through the mail.**

General correspondence refers to traditional mail sent or received via the U.S. Postal Service.  For the purpose of this policy, general correspondence refers to inmate mail only.

The Warden or designee must give prior approval for an inmate to receive or send a package (see the Program Statement **Mail Management Manual**).  Procedures for incoming publications are discussed in the Program Statement **Incoming Publications**. Procedures for inmate electronic messaging are addressed in the Program Statement **Trust Fund Limited Inmate Computer System (TRULINCS) — Electronic Messaging**.

**(1)  *Open general correspondence* means general correspondence which is not limited to a list of authorized correspondents, except as provided in § 540.17.**

28 CFR § 540.17 refers to Section 9 of this Program Statement.

**(2)  *Restricted general correspondence* means general correspondence which is limited to a list of authorized correspondents.**

**(b)  *Representatives of the news media* means persons whose principal employment is to gather or report news for:**

**(1)  A newspaper which qualifies as a general circulation newspaper in the community in which it is published.  A newspaper is one of "general circulation" if it circulates among the general public and if it publishes news of a general character of general interest to the public such as news of political, religious, commercial, or social affairs.  A key test to determine whether a newspaper qualifies as a "general circulation" newspaper is to determine whether the paper qualifies for the purpose of publishing legal notices in the community in which it is located or the area to which it distributes;**

**(2)  A news magazine which has a national circulation and is sold by newsstands and by mail subscription to the general public;**

**(3)  A national or international news service; or**

**(4)  A radio or television news program, whose primary purpose is to report the news, of a station holding a Federal Communications Commission license.**

**(c)  *Special mail* means correspondence *sent to* the following:  President and Vice President of the United States, the U.S. Department of Justice (including the Bureau of Prisons), U.S. Attorneys Offices, Surgeon General, U.S. Public Health Service, Secretary of the Army, Navy, or Air Force, U.S. Courts (including U.S. Probation Officers), Members of the U.S. Congress, Embassies and Consulates, Governors, State Attorneys General, Prosecuting Attorneys, Directors of State Departments of Corrections, State Parole Commissioners, State Legislators, State Courts, State Probation Officers, other Federal and State law enforcement offices, attorneys, and representatives of the news media.**

The Centers for Disease Control (CDC) is part of the U.S. Public Health Service; correspondence sent to the CDC is considered special mail.

An inmate is expected to use the special mail privilege responsibly.  Refer questions concerning alleged abuses to the Office of General Counsel.

**Special mail also includes correspondence *received from* the following: President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts.  For incoming correspondence to be processed under the special mail procedures (see §§ 540.18--540.19), the sender must be adequately identified on the envelope, and the front of the envelope must be marked "Special Mail — Open only in the presence of the inmate".**

28 CFR §§ 540.18-19 refers to Sections 10 and 11, respectively, of this Program Statement.

d.  *Warden* is defined in 28 CFR 500.1, separately published, as "... the chief executive officer of a U.S. Penitentiary, Federal Correctional Institution, Medical Center for Federal Prisoners, Federal Prison Camp, Federal Detention Center, Metropolitan Correctional Center, or any federal penal or correctional institution or facility. 'Warden' also includes any staff member with authority explicitly delegated by any chief executive officer."

3.  **MAIL DEPOSITORIES**

**§ 540.11 Mail depositories.**

**The Warden shall establish at least one mail depository within the institution for an inmate to place outgoing correspondence.  The Warden may establish a separate mail depository for outgoing special mail.  Each item placed in a mail depository must contain a return address. (see § 540.12(d)).**

28 CFR § 540.12(d) refers to Section 4.d. of this Program Statement.

The Warden of Federal Detention Centers, Metropolitan Correctional Centers, and Metropolitan Detention Centers will establish a mail depository to allow an attorney to "hand-deliver" legal mail to the institution (see the **Mail Management Manual**).  Other facilities housing pretrial inmates may also establish a mail depository for attorneys to "hand-deliver" special mail.

4.  **CONTROLS AND PROCEDURES**

**§ 540.12 Controls and procedures.**

**(a)  The Warden shall establish and exercise controls to protect individuals, and the security, discipline, and good order of the institution.  The size, complexity, and security level of the institution, the degree of sophistication of the inmates confined, and other variables require flexibility in correspondence procedures. All Wardens shall establish open general correspondence procedures.**

Open general correspondence privileges may be given to inmates who are able to exercise them responsibly.  Care should be taken during orientation and thereafter to help inmates understand their responsibility for open correspondence privileges.

**(b)  Staff shall inform each inmate in writing promptly after arrival at an institution of that institution's rules for handling of inmate mail.  This notice includes the following statement:**

**The staff of each institution of the Bureau of Prisons has the authority to open all mail addressed to you before it is delivered to you.  "Special Mail" (mail from the President and Vice President of the U.S., attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts) may be opened only in your presence to be checked for contraband.  This procedure occurs only if the sender is adequately identified on the envelope and the front of the envelope is marked "Special Mail — Open only in the presence of the inmate." Other mail may be opened and read by the staff.**

**If you do not want your *general* correspondence opened and read, the Bureau will return it to the Postal Service.  This means that you will not receive such mail. You may choose whether you want your general correspondence delivered to you subject to the above conditions, or returned to the Postal Service.  Whatever your choice, special mail will be delivered to you, after it is opened in your presence and checked for contraband.  You can make your choice by signing Part I or Part II.**

If the inmate elects not to have his/her general correspondence opened and read or refuses to sign the notice, a copy of the refusal is forwarded to the mail room (notice follows this section).

**Part I — General Correspondence to be Returned to the Postal Service**

**I have read or had read to me the foregoing notice regarding mail.  I do not want my general correspondence opened and read.  I REQUEST THAT THE BUREAU OF PRISONS RETURN MY GENERAL CORRESPONDENCE TO THE POSTAL SERVICE. I understand that special mail will be delivered to me, after it is opened in my presence and checked for contraband.**

_____         _____         _____
**(Name)                      (Reg. No.)              (Date)**

**Part II — General Correspondence to be Opened, Read, and Delivered**

**I have read or had read to me the foregoing notice regarding mail, I WISH TO RECEIVE MY GENERAL CORRESPONDENCE.  I understand that the Bureau of Prisons may open and read my general correspondence if I choose to receive same.  I also understand that special mail will be delivered to me, after it is opened in my presence and checked for contraband.**

**_____          _____          _____**
**(Name)                          (Reg. No.)                (Date)**

_____

**Inmate _____   _____, refused to sign this form.  He (she) was**
        **(NAME)        (REG. NO.)**
**advised by me that the Bureau of Prisons retains the authority to open and read all general correspondence.  The inmate was also advised that his (her) refusal to sign this form will be interpreted as an indication that he (she) wishes to receive general correspondence subject to the conditions in Part II above.**

**_____          _____**
**Staff Member's Signature                Date**

The above notice is included as part of the Acknowledgment of Inmate (BP-A0407).

**(c)  Staff shall inform an inmate that letters placed in the U.S. Mail are placed there at the request of the inmate and the inmate must assume responsibility for the contents of each letter.  Correspondence containing threats, extortion, etc., may result in prosecution for violation of federal laws.  When such material is discovered, the inmate may be subject to disciplinary action, the written material may be copied, and all material may be referred to the appropriate law enforcement agency for prosecution.**

**(d)  The inmate is responsible for filling out the return address completely on envelopes provided for the inmate's use by the institution.  If the inmate uses an envelope not provided by the institution, the inmate is responsible for ensuring that the envelope used contains all return address information listed on the envelope provided by the institution.**

All envelopes, whether preprinted envelopes ordered through UNICOR or written by the inmate, must have a return address with the:

- Inmate's name.
- Register number.
- Name of the institution.

P5265.14   4/5/2011   **Federal Regulations are shown in this type**.   Implementing instructions: this type.      6

- P.O. Box (or street address if there is no P.O. Box).
- City, state, and ZIP code.

In addition, all outgoing mail, for institutions with a TRULINCS-generated mailing label system, must utilize these mailing labels on all outgoing correspondence, in accordance with the Program Statement **Trust Fund Limited Inmate Computer System (TRULINCS) — Electronic Messaging**.  Consistent with this TRULINCS Program Statement, if an inmate fails to place the TRULINCS-generated label on outgoing postal mail, the mail is returned to the inmate for proper preparation.

5.   **NOTIFICATION OF REJECTIONS**

**§ 540.13 Notification of rejections.**

**When correspondence is rejected, the Warden shall notify the sender in writing of the rejection and the reasons for the rejection.  The Warden shall also give notice that the sender may appeal the rejection.  The Warden shall also notify an inmate of the rejection of any letter addressed to that inmate, along with the reasons for the rejection and shall notify the inmate of the right to appeal the rejection.  The Warden shall refer an appeal to an official other than the one who originally disapproved the correspondence.  The Warden shall return rejected correspondence to the sender unless the correspondence includes plans for or discussion of commission of a crime or evidence of a crime, in which case there is no need to return the correspondence or give notice of the rejection, and the correspondence should be referred to appropriate law enforcement authorities.  Also, contraband need not be returned to the sender.**

The Warden may not delegate the authority to reject correspondence or sign notification letters below the level of Associate Warden.

Section 6.d outlines the basis for determining whether correspondence should be rejected. Returned Correspondence (BP-A0327) is used to notify the involved parties of the rejection. "Nuisance" contraband is returned to the sender using Stamps, Negotiable Instrument & Other Returned to Sender (BP-A0328).

The Warden acknowledges receipt of an appeal from the sender of a rejected letter and designates the appropriate staff to respond.  When the Warden makes the initial rejection, a subsequent appeal by a non-inmate sender is referred to the Regional Office.

If the Warden is doubtful about the propriety of an incoming or outgoing letter or has questions concerning the interpretation of regulations, he/she may refer the problem to the Regional Correctional Programs Administrator or the Regional Counsel.  In case of rejection, the offending content is reproduced and retained for a reasonable period (at least 3 months), to have it available if the rejection is appealed.

6.  **GENERAL CORRESPONDENCE**

**§ 540.14 General correspondence.**

**(a)  Institution staff shall open and inspect all incoming general correspondence. Incoming general correspondence may be read as frequently as deemed necessary to maintain security or monitor a particular problem confronting an inmate.**

**(b)  Except for "special mail," outgoing mail from a pretrial inmate may not be sealed by the inmate and may be read and inspected by staff.**

**(c) (1)  Outgoing mail from a sentenced inmate in a minimum or low security level institution may be sealed by the inmate and, except as provided for in paragraphs (c)(1)(i) through (iv) of this section, is sent out unopened and uninspected.  Staff may open a sentenced inmate's outgoing general correspondence:**

**(i)  If there is reason to believe it would interfere with the orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity;**

**(ii)  If the inmate is on a restricted correspondence list;**

**(iii)  If the correspondence is between inmates (see § 540.17); or**

28 CFR § 540.17 refers to Section 9 of this Program Statement.

**(iv)  If the envelope has an incomplete return address.**

**(2)  Except for "special mail," outgoing mail from a sentenced inmate in a medium or high security level institution, or an administrative institution may not be sealed by the inmate and may be read and inspected by staff.**

See the Program Statement **Inmate Security Designation and Custody Classification** for identification of security levels.

(3)  **Mail Monitoring**.  Each institution establishes procedures for monitoring incoming and outgoing mail.  Institutions may wish to give closer scrutiny to incoming and outgoing mail of inmates, for example, who:

■   Participated in criminal activity of a sophisticated nature.
■   Committed crimes that involved mail or fraudulent schemes.
■   Are considered escape risks.

■   Present management problems (i.e., interference /disruption of the orderly running of the institution).

The staff member designated to supervise correspondence may keep a list of such inmates. Monitoring procedures may not interfere with mail handling.

(4)  **Reading and Inspection**.  As stated in this section, all incoming general correspondence and outgoing mail in medium, high, and administrative institutions (except "special mail") is subject to random reading by correctional staff.  The objectives of reading mail differ from the objectives of inspection.  For *inspection* (to which all incoming general correspondence is subjected), the objective is primarily to detect contraband.  The random *reading* of mail is intended to reveal, for example, escape plots, plans to commit illegal acts, plans to violate institution rules, or other security concerns.

(5)  **Disclosure**.  When reading correspondence, a staff member may incidentally learn information about the private lives of inmates or their correspondents.  Bureau staff must be sensitive to the fact that most information in correspondence is private, and must be handled discreetly.  Unless there is a legitimate correctional concern relating to security, safety, orderly running of the institution, criminal activity, or inmate rehabilitation, the contents of reviewed correspondence should not be revealed to any other person.

**(d)  The Warden may reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity. Correspondence which may be rejected by a Warden includes, but is not limited to, correspondence which contains any of the following:**

**(1)  Matter which is nonmailable under law or postal regulations;**

**(2)  Matter which depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption;**

This includes any printed material individually identified as placing that inmate, another inmate, or staff at risk of assault or other safety concerns.

**(3)  Information of escape plots, of plans to commit illegal activities, or to violate Bureau rules or institution guidelines;**

**(4)  Direction of an inmate's business (See § 541.13, Prohibited Act No. 408).  An inmate, unless a pre-trial detainee, may not direct a business while confined.**

**This does not, however, prohibit correspondence necessary to enable an inmate to protect property and funds that were legitimately the inmate's at the time of commitment.  Thus, for example, an inmate may correspond about refinancing an**

**existing mortgage or sign insurance papers, but may not operate a mortgage or insurance business while in the institution.**

§ 541.13, Prohibited Act No. 408, refers to Chapter 4 of the Program Statement **Inmate Discipline and Special Housing Units**.

**(5)  Threats, extortion, obscenity, or gratuitous profanity;**

**(6)  A code;**

**(7)  Sexually explicit material (for example, personal photographs) which by its nature or content poses a threat to an individual's personal safety or security, or to institution good order; or**

Nude or sexually suggestive photos (individual prints or copies as opposed to those from publications) present a special concern for personal safety, security, and good order.  This is particularly true when the subject is an inmate's relative, friend, or acquaintance.  For these reasons, ordinarily an inmate is not permitted to receive through the mail a personal photograph in which the subject is nude, displays genitalia or female breasts, or when the photo depicts sexual suggestive acts such as intercourse, fellatio, or sodomy.

The exclusion of this or similar materials is determined by whether it would be detrimental to an individual's safety or security, or to institution good order, if it were in the inmate's possession.  For purposes of this section, clippings from publications are considered correspondence.  For the rule on publications, see the Program Statement **Incoming Publications**.

**(8)  Contraband.  (See § 500.1 of this chapter.  A package received without prior authorization by the Warden is considered to be contraband.)**

28 CFR 500.1 is contained in Section 2.d. of this Program Statement.

Multiple copies of printed materials intended for inmate distribution and third-party mailing are also considered contraband.

7.  **RESTRICTED GENERAL CORRESPONDENCE**

**§ 540.15 Restricted general correspondence.**

**(a)  The Warden may place an inmate on restricted general correspondence based on misconduct or as a matter of classification.**

For this restriction, the term "classification" is used to identify categories of behavior.

**Determining factors include the inmate's:**

**(1)  Involvement in any of the activities listed in § 540.14(d);**

28 CFR § 540.14(d) is contained in Section 6.d. of this Program Statement.

**(2)  Attempting to solicit funds or items (e.g., samples), or subscribing to a publication without paying for the subscription;**

**(3)  Being a security risk;**

**(4)  Threatening a government official; or**

**(5)  Having committed an offense involving the mail.**

**(b)  The Warden may limit to a reasonable number persons on the approved restricted general correspondence list of an inmate.**

A recommendation to place an inmate on restricted correspondence is made by the unit team during the inmate's program review or by the Unit Disciplinary Committee (UDC) or Disciplinary Hearing Officer (DHO), when restricted correspondence is required by an infraction of an institution rule.

Action taken by the UDC or DHO as a disciplinary sanction is ordinarily based on a finding of violation of correspondence regulations.

**(c)  The Warden shall use one of the following procedures before placing an inmate on restricted general correspondence.**

**(1)  Where the restriction will be based upon an incident report, procedures must be followed in accordance with inmate disciplinary regulations (part 541, subpart B of this chapter).**

Part 541, subpart B, refers to the Program Statement **Inmate Discipline and Special Housing Units**.

**(2)  Where there is no incident report, the Warden:**

**(i)  Shall advise the inmate in writing of the reasons the inmate is to be placed on restricted general correspondence;**

**(ii)  Shall give the inmate the opportunity to respond to the classification or change in classification; the inmate has the option to respond orally or to submit written information or both; and**

**(iii)  Shall notify the inmate of the decision and the reasons, and shall advise the inmate that the inmate may appeal the decision under the Administrative Remedy Procedure.**

**(d)  When an inmate is placed on restricted general correspondence, the inmate may, except as provided in §§ 540.16 and 540.17:**

28 §§ CFR 540.16 and 540.17 refer to Sections 8 and 9, respectively, of this Program Statement.

**(1)  Correspond with the inmate's spouse, mother, father, children, and siblings, unless the correspondent is involved in an violation of correspondence regulations, or would be a threat to the security or good order of the institution;**

The word "spouse" includes a common-law relationship which has previously been established in a state which recognizes this status.  In states that do not, a common-law relationship is not considered "immediate family."  For determination of applicable state laws, consult the Regional Counsel.

**(2)  Request other persons also to be placed on the approved correspondence list, subject to investigation, evaluation, and approval by the Warden; with prior approval, the inmate may write to a proposed correspondence to obtain a release authorizing an investigation; and**

**(3)  Correspond with former business associates, unless it appears to the Warden that the proposed correspondent would be a threat to the security or good order of the institution, or that the resulting correspondence could reasonably be expected to result in criminal activity.  Correspondence with former business associates is limited to social matters.**

**Verification Procedures**.  Each year it becomes more difficult to obtain information from law enforcement agencies on proposed correspondents.  For this reason, staff attempt to secure information from other sources, including the inmate, the proposed correspondent, and the U.S. Probation Officer.  Each institution develops its own verification procedures, depending on the sophistication of its inmates and resources for verification.

A release from the individual in question may be necessary (for example, under the Privacy Act) to complete the investigation.  If a release is needed, the inmate is responsible for obtaining it, and is permitted to write to the correspondent for this purpose.

**(e)  The Warden may allow an inmate additional correspondence with persons other than those on the inmate's approved mailing list when the correspondence is shown to be necessary and does not require an addition to the mailing list because it is not of an ongoing nature.**

8.  **INMATE CORRESPONDENCE WHILE IN SEGREGATION AND HOLDOVER STATUS**

**§ 540.16 Inmate correspondence while in segregation and holdover status.**

**(a)  The Warden shall permit an inmate in holdover status (i.e., enroute to a designated institution) to have correspondence privileges similar to those of other inmates insofar as practical.**

**(b)  The Warden shall permit an inmate in segregation to have full correspondence privileges unless placed on restricted general correspondence under § 540.15.**

28 CFR § 540.15 refers to Section 7 of this Program Statement.

9.  **CORRESPONDENCE BETWEEN CONFINED INMATES**

**§ 540.17 Correspondence between confined inmates.**

**An inmate may be permitted to correspond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family, or is a party or witness in a legal action in which both inmates are involved.  Such correspondence may be approved in other exceptional circumstances, with particular regard to the security level of the institution, the nature of the relationship between the two inmates, and whether the inmate has other regular correspondence.  The following additional limitations apply:**

Inmates must provide current documentation (dated within the past six months) to support both inmates are parties to or a witness in a current legal action.  At subsequent inmate team reviews, inmates will provide supporting documentation to continue correspondence privileges.

**(a)  Such correspondence at institutions of all security levels may always be inspected and read by staff at the sending and receiving institutions (it may not be sealed by the inmate); and**

If inspection of the correspondence reveals communication other than a legal matter, the unit manager will be advised and a determination will be made whether to disapprove further correspondence.  If privileges are rescinded, the unit manager or designee will ensure mail room and trust fund staff are notified.

**(b)  (1)  The appropriate unit manager at each institution must approve of the correspondence if both inmates are housed in Federal institutions and both inmates are members of the same immediate family or are a party or witness in a legal action in which both inmates are involved.**

The Warden is appraised of unusual circumstances pertaining to a request (e.g., inmates who have Central Inmate Monitoring assignments and/or disruptive group members) to correspond, for members of the same immediate family or for inmates who are a party or witness in the same legal action, for inmates housed in federal facilities.

Normally, the approval of mail correspondence privileges will apply to electronic messages generated via TRULINCS.  The approval of correspondence privileges for both inmates will remain in effect even if either is transferred within the Bureau.  The unit team will forward a copy of the approved mail correspondence to the mail room and trust fund staff for processing.

Unit team staff will review the status of previously approved correspondence during the inmate's classification/program review.  When denying an inmate's request to correspond with immediate family, the unit manager will document the reason(s) for the denial.

**(2)  The Wardens of both institutions must approve of the correspondence if one of the inmates is housed at a non-Federal institution or if approval is being granted on the basis of exceptional circumstances.**

The Warden documents a denial or the rationale for approving the request for an inmate to correspond with an inmate, who is an immediate family member or a party or witness in the same legal action, housed in a non-federal facility/contract facility.

The approval of correspondence privileges for the inmate will remain in effect even when the inmate transfers within the Bureau.  Unit team will review previously approved correspondence for either of the above circumstances.  Unit team will forward a copy of the approval for mail correspondence to mail room staff.

10.  **SPECIAL MAIL**

**§ 540.18 Special mail.**

**(a)  The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail.  The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail — Open only in the presence of the inmate".**

Incoming mail meeting these requirements must be treated per this rule.  The Warden may, however, treat incoming mail that does not meet all requirements for special mail handling in the same fashion as special mail, including opening it in the inmate's presence and inspecting it only for contraband.  For example, mail from the chambers of a Federal judge or from a Member of Congress should be given special handling even if it does not have a special mail marking on the envelope.

Similarly, mail from an adequately identified sender that contains markings similar to the phrase "Special Mail — Open only in the presence of the inmate" may be given special handling. Examples of similar markings include "Attorney-Client — Open only in the presence of the inmate" and "Legal Mail — Open only in the presence of the inmate."

**(b)  In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail.**

**(c)  (1) Except as provided for in paragraph (c)(2) of this section, outgoing special mail may be sealed by the inmate and is not subject to inspection.**

**(2)  Special mail shall be screened in accordance with the provisions of paragraph (c)(2)(iii) of this section when the special mail is being sent by an inmate who has been placed on restricted special mail status.**

**(i)  An inmate may be placed on restricted special mail status if the Warden, with the concurrence of the Regional Counsel, documents in writing that the special mail either has posed a threat or may pose a threat of physical harm to the recipient (e.g., the inmate has previously used special mail to threaten physical harm to a recipient).**

**(ii)  The Warden shall notify the inmate in writing of the reason the inmate is being placed on restricted special mail status.**

**(iii)  An inmate on restricted special mail status must present all materials and packaging intended to be sent as special mail to staff for inspection.  Staff shall inspect the special mail material and packaging, in the presence of the inmate, for contraband.  If the intended recipient of the special mail has so requested, staff may read the special mail for the purpose of verifying that the special mail does not contain a threat of physical harm.  Upon completion of the inspection, staff shall return the special mail material to the inmate if the material does not contain contraband, or contain a threat of physical harm to the intended recipient. The inmate must then seal the special mail material in the presence of staff and immediately give the sealed special mail material to the observing staff for delivery.  Special mail determined to pose a threat to the intended recipient shall be forwarded to the appropriate law enforcement entity.  Staff shall send a copy of the material, minus the contraband, to the intended recipient along with notification that the original of the material was forwarded to the appropriate law enforcement entity.**

**(iv)  The Warden shall review an inmate's restricted special mail status at least once every 180 days.  The inmate is to be notified of the results of this review.  An**

**inmate may be removed from restricted special mail status if the Warden determines, with the concurrence of the Regional Counsel, that the special mail does not threaten or pose a threat of physical harm to the intended recipient.**

**(v)  An inmate on restricted mail status may seek review of the restriction through the Administrative Remedy Program.**

**(d)  Except for special mail processed in accordance with paragraph (c)(2) of this section, staff shall stamp the following statement directly on the back side of the inmate's outgoing special mail:**

**"The enclosed letter was processed through special mailing procedures for forwarding to you.  The letter has neither been opened nor inspected.  If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification.  If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address."**

The stamp includes the above statement, the name and address of the institution and space for the date.

## 11.  LEGAL CORRESPONDENCE

**§ 540.19 Legal correspondence.**

**(a)  Staff shall mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter.  The inmate may be asked to sign as receiving the incoming legal mail.  This paragraph applies only if the sender has marked the envelope as specified in § 540.18.**

28 CFR § 540.18 refers to Section 10 of this Program Statement.

Staff are expected to develop a master log containing the above information.  The inmate may be requested (but not required) to sign the log, indicating receipt of the legal mail.  If the inmate refuses, staff note this in the log.

**(b)  The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail — Open only in the presence of the inmate".**

**Legal mail shall be opened in accordance with special mail procedures (see §
540.18).**

28 CFR § 540.18 refers to Section 10 of this Program Statement.

**(c)  Grounds for the limitation or denial of an attorney's correspondence rights or
privileges are stated in part 543, subpart B.  If such action is taken, the Warden
shall give written notice to the attorney and the inmate affected.**

Part 543, subpart B, refers to the Program Statement **Inmate Legal Activities**.

Any violation of the attorney/client correspondence privilege is referred to Regional Counsel,
who, in conjunction with the Office of General Counsel, may restrict the inmate or attorney from
further correspondence privileges.

**(d)  In order to send mail to an attorney's assistant or to a legal aid student or
assistant, an inmate shall address the mail to the attorney or legal aid supervisor,
or the legal organization or firm, to the attention of the student or assistant.**

See the Program Statement **Inmate Legal Activities** for information concerning Bureau
recognition of an attorney's assistant or legal aid student assistant.

**(e)  Mail to an inmate from an attorney's assistant or legal aid student or
assistant, in order to be identified and treated by staff as special mail, must be
properly identified on the envelope as required in paragraph (b) of this section,
and must be marked on the front of the envelope as being mail from the attorney
or from the legal aid supervisor.**

12.  **INMATE CORRESPONDENCE WITH REPRESENTATIVES OF THE NEWS
MEDIA**

**§ 540.20 Inmate correspondence with representatives of the news media.**

**(a)  An inmate may write through "special mail" to representatives of the news
media specified by name or title (see § 540.2(b)).**

28 CFR § 540.2(b) refers to Section 2.b. of this Program Statement.

Properly identified and labeled correspondence from an inmate who is not on restricted mail
status to qualifying news media representatives is sealed and forwarded without inspection,
directly and promptly.  Properly identified and labeled correspondence from an inmate on
restricted special mail status is also sealed and forwarded promptly, but may be subject to
inspection per procedures in Section 10.  If there is doubt whether a representative qualifies,
contact the Public Information Officer in the Central Office.

**(b)  The inmate may not receive compensation or anything of value for correspondence with the news media.  The inmate may not act as reporter.**

**(c)  Representatives of the news media may initiate correspondence with an inmate.  Staff shall open incoming correspondence from representatives of the media and inspect for contraband, for its qualification as media correspondence, and for content which is likely to promote either illegal activity or conduct contrary to Bureau regulations.**

See the Program Statement **News Media Contacts** on other aspects of contact with news media.

13.  **PAYMENT OF POSTAGE**

**§ 540.21 Payment of postage.**

**(a)  Except as provided in paragraphs (d), (e), (f), and (i) of this section, postage charges are the responsibility of the inmate.  The Warden shall ensure that the inmate commissary has postage stamps available for purchase by inmates.**

Mail room staff should obtain postage rate charts from the local servicing post office and place them where inmates ordinarily have access — the mail room or housing units.

(1)  **Postage Sold by Commissary**.  The inmate commissary must have available sufficient stamp denominations to allow mailing letters in excess of 1 ounce, but not requiring an additional first-class stamp.

(2)  **Purchase Limitation**.  The Warden issues local guidelines, which ordinarily limit an inmate's commissary purchase per visit to 20 postage stamps (denomination for first-class, domestic, 1-ounce mailing), or the equivalent; if such visits are limited to once per week or less, the Warden may authorize an additional purchase of stamps.

(3)  **Inmate Possession of Postage Stamps**.  The Warden issues local guidelines, limiting an inmate's possession of stamps at one time to no more than 60 (denomination for first-class, domestic, 1-ounce mailing), or the equivalent.  The Warden may authorize possession of stamps to a specified amount in excess of this limit.  The stamps are to be maintained by the inmate in the same manner the stamps are sold or in the manner provided by the unit manager.

(4)  **Approval for Additional Purchases**.  An inmate may be authorized to purchase (per commissary visit) more than 20 postage stamps (denomination for first-class, domestic, 1-ounce mailing), or the equivalent, only upon approval of the associate warden.  This authority may not be delegated below unit manager.

**(b)  Writing paper and envelopes are provided at no cost to the inmate.  Inmates who use their own envelopes must place a return address on the envelope (see § 540.12(d)).**

28 CFR § 540.12(d) refers to Section 4(d) of this Program Statement.

**(c)  Inmate organizations will purchase their own postage.**

**(d)  An inmate who has neither funds nor sufficient postage and who wishes to mail legal mail (includes courts and attorneys) or Administrative Remedy forms will be provided the postage stamps for such mailing.  To prevent abuses of this provision, the Warden may impose restrictions on the free legal and administrative remedy mailings.**

(1)  To prevent abuses of Bureau directives regarding purchase of postage, Wardens will:

■  Provide an inmate who has neither funds nor postage up to five postage stamps (denomination for first-class, domestic, 1-ounce mailing) or the equivalent each week, for legal mail or Administrative Remedy filing
■  Require an inmate who has, for at least two separate months, depleted his/her commissary account, obtained Government-paid postage stamps, and then restored money to the account to complete the form for reimbursement Request for Withdrawal of Inmate's Personal Funds (BP-199) for the amount of postage given for legal mail or Administrative Remedy filings.  Commissary staff hold the BP-199 and charge it against the inmate's account as soon as he/she has funds (see the Program Statement **Trust Fund Management Manual**).
■  Allow an inmate to purchase sufficient postage for legal mail or Administrative Remedy mailings.  The amount may not exceed the limit for postage purchases.

(2)  The associate warden makes a final determination whether the inmate is to receive postage under the conditions of this subsection.  An "inmate without funds" means an inmate without sufficient commissary balance to purchase a postage stamp sufficient for first-class, 1-ounce domestic mailing.  This authority may not be delegated below unit manager.

**(e)  When requested by an inmate who has neither funds nor sufficient postage, and upon verification of this status by staff, the Warden shall provide the postage stamps for mailing a reasonable number of letters at government expense to enable the inmate to maintain community ties.  To prevent abuses of this provision, the Warden may impose restrictions on the free mailings.**

Five letters per month are suggested as reasonable in most circumstances.  To prevent abuses, the Warden may require reimbursement as provided in Section 13(d)(1).  The associate warden (not to be delegated below unit manager) makes a final determination on whether the inmate is to receive postage under this subsection.

In making this determination, an "inmate without funds" means an inmate without sufficient commissary balance to purchase a postage stamp sufficient for first-class, 1-ounce domestic mailing, or postage for half-ounce international air mail for an inmate whose community ties require foreign correspondence.

**(f)  Mailing at government expense is also allowed for necessary correspondence in verified emergency situations for inmates with neither funds nor sufficient postage.**

The associate warden makes a final determination whether the inmate is to receive postage stamps under this subsection.  This authority may not be delegated below unit manager.

**(g)  Inmates must sign for all stamps issued to them by institution staff.**

A separate log is kept for this purpose.

**(h)  Mail received with postage due is not ordinarily accepted by the Bureau of Prisons.**

The mail room staff refuses postage-due mail.  However, if such mail is tendered to mail room staff without collection of postage due, it is processed without further collection action (see the **Mail Management Manual**).

**(i)  Holdovers and pre-trial commitments will be provided a reasonable number of stamps for the mailing of letters at government expense.**

Three letters per week is suggested as reasonable in most circumstances.  Commissary purchase of postage is also available to pretrial inmates.  For holdovers, additional Government-furnished postage stamps may be allowed for special needs demonstrated by the inmate.

**(j)  Inmates may not be permitted to receive stamps or stamped items (e.g., envelopes embossed with stamps, postal cards with postage affixed) other than by issuance from the institution or by purchase from commissary.**

Stamps and stamped items sent into the institution are returned to the sender.  Indicate the reason for return on Form BP-A0328, Stamps, Negotiable Instrument & Other Returned to Sender.  A copy of the form is placed with the correspondence for delivery to the inmate.  See the **Mail Management Manual** for further information.

k.  The institution's business manager is responsible for the purchase and security of stamps purchased by the Bureau for issue to inmates per Section 13.d.  The business manager also conducts quarterly audits.

14.   **SPECIAL POSTAL SERVICES**

**§ 540.22  Special postal services.**

The information in this section was extracted from the **Mail Management Manual**.  See that policy for more detailed information.

**(a)  An inmate, at no cost to the government, may send correspondence by registered, certified, or insured mail, and may request a return receipt.**

**(b)  An inmate may insure outgoing personal correspondence (e.g., a package containing the inmate's hobbycrafts) by completing the appropriate form and applying sufficient postage.**

The Request Authorization to Mail Inmate Package (BP-329) form is used.

**(1)  In the event of loss or damage, any claim relative to this matter is made to the U.S. Postal Service, either by the inmate or the recipient.  The U.S. Postal Service will only indemnify a piece of insured mail for the actual value of an item, regardless of declared value.**

When an inmate decides that a claim is necessary for an incoming piece of insured mail, he/she is advised that the mailer is the most appropriate person to file the claim with the U.S. Postal Service.

**(2)  Inmate packages forwarded as a result of institution administration are considered official mail, except as otherwise specified (for example, hobbycraft articles mailed out of the institution).  Official mail is not insured.  If such an item is subsequently lost or damaged in the mail process the inmate may file a tort claim with the Bureau of Prisons (see part 543, subpart C of this chapter).**

Such packages are forwarded as official mail at Government expense.  If documentation indicates that the package left Bureau control and was lost or damaged by the U.S. Postal Service (or mailed via a contract mail provider), the inmate is instructed to file a tort claim with the U.S. Postal Service (or directly with the contract mail provider) (see the Program Statement **Federal Tort Claims Act**).  Hobbycraft articles are discussed in the Program Statement **Inmate Recreation Programs**.

**(c)  Certified mail is sent first class at the inmate's expense.**

The inmate must pay basic postage, costs of certification, and costs of a return receipt (if requested).

**(d)  An inmate may not be provided such services as express mail, COD, private carriers, or stamp collecting while confined.**

15.   **INMATE FUNDS RECEIVED THROUGH THE MAILS**

**§ 540.23 Inmate funds received through the mails.**

**Except as provided for in part 506 of this chapter, funds enclosed in inmate correspondence are to be rejected.  Deposits intended for the inmate's commissary account must be mailed directly to the centralized commissary account (see 28 CFR part 506).**

Section 2 of the Acknowledgment of Inmate, Part 1 & 2 (BP-A0407) contains an authorization for disposition of funds.  The inmate ordinarily completes this form upon initial entry into Bureau custody.  Negotiable instruments must include the inmate's full name and register number.

Negotiable instruments received through the mail enclosed in inmate correspondence are rejected using the Stamps, Negotiable Instrument and Other Returned to Sender form (BP-A0328).

Inmates are not permitted to receive unsolicited funds through the mail, nor are inmates permitted to solicit funds or initiate requests for funds other than from family and friends.

b. Staff should be alert to unusual activity concerning funds received for posting to an inmate's account or being mailed out of the institution.  For example, accounting technicians, unit staff and others should notify the unit manager when an inmate receives a large amount of money either in a lump sum or over a short period of time or has unusual activity in his/her account.  The unit manager determines whether an appropriate reason exists for such activity or if a referral to the captain is necessary.

16.   **RETURNED MAIL**

**§ 540.24 Returned mail.**

**Staff shall open and inspect for contraband all undelivered mail returned to an institution by the Post Office before returning it to the inmate.  The purpose of this inspection is to determine if the content originated with the inmate sender identified on the letter or package; to prevent the transmission of material, substances, and property which an inmate is not permitted to possess in the institution; and to determine that the mail was not opened or tampered with before its return to the institution.  Any remailing is at the inmate's expense.  Any returned mail qualifying as "special mail" is opened and inspected for contraband in the inmate's presence.**

17.   **CHANGE OF ADDRESS AND FORWARDING OF MAIL FOR INMATES**

**§ 540.25 Change of address and forwarding of mail for inmates.**

**(a)  Staff shall make available to an inmate who is being released or transferred appropriate Bureau of Prisons and U.S. Postal Service forms for change of address.**

A U.S. Postal Service "Change of Address" kit is made available to each inmate being transferred to notify correspondents.  (**Note**:  The "kit" is a notice to publishers, businesses, correspondents, etc.; it is **not** a notification to the U.S. Postal Service.)  Staff obtain supplies of these kits from the servicing U.S. postal facility.  Kits are kept in Receiving and Discharge and the mail room for inmates leaving the institution.

**(b)  Inmates are responsible for informing their correspondents of a change of address.**

**(c)  Postage for mailing change of address cards is paid by the inmate**.

**(d)  Except as provided in paragraphs (e) through (g) of this section, all mail received for a released or transferred inmate will be returned to the U.S. Postal Service for disposition in accordance with U.S. Postal Service regulations.**

**(e)  Staff shall use all means practicable to forward special mail.**

The Program Statement **Mail Management Manual** provides more detailed instructions on forwarding inmate special mail.

**(f)  Staff shall forward inmate general correspondence to the new address for a period of 30 days.**

Inmate general mail (as opposed to special mail) is forwarded to the new address for 30 days. General mail is forwarded to the address in the SENTRY database.  After 30 days, general mail is returned to the sender with the notation "Not at this address — return to sender."

**(g)  Staff shall permit an inmate released temporarily on writ to elect either to have general correspondence held at the institution for a period not to exceed 30 days, or returned to the U.S. Postal Service for disposition.**

Use the form Disposition of General Correspondence While Inmate is Released Temporarily on Writ (BP-A0398).

**(1)  If the inmate refuses to make this election, staff at the institution shall document this refusal, and any reasons, in the inmate's central file.  Staff shall**

**return to the U.S. Postal Service all general correspondence received for such as inmate after the inmate's departure.**

Document the refusal on the Disposition of General Correspondence While Inmate is Released Temporarily on Writ (BP-A0398).

**(2)  If the inmate does not return from writ within the time indicated, staff shall return to the U.S. Postal Service all general correspondence being held for that inmate for disposition in accordance with postal regulations.**

## 18.  INSTITUTION SUPPLEMENT

Each institution must update its Institution Supplement (IS) and forward a copy to the Regional Correctional Programs Administrator.  The IS includes:

- Designation of a staff member to supervise inmate correspondence.
- Procedures for monitoring incoming and outgoing mail, including inspection and reading mail, especially to and from particular inmates.
- Use of a master log to note receipt and inmate acknowledgment of incoming legal mail.
- Limitations on the amount of postage stamps an inmate may possess and single purchases of stamps.
- Restrictions on free legal and administrative remedy mailings.

## REFERENCES

*Program Statements*
P1315.07      Legal Activities, Inmate (11/5/99)
P1320.06      Federal Tort Claims Act (8/1/03)
P1330.16      Administrative Remedy Program (12/31/07)
P1480.05      News Media Contacts (9/21/00)
P4500.07      Trust Fund/Deposit Fund Manual (4/19/10)
P5100.08      Inmate Security Designation and Custody Classification (9/12/06)
P5265.13      Trust Fund Limited Inmate Computer System (TRULINCS)
                   — Electronic Messaging (2/19/09)
P5266.10      Incoming Publications (1/10/03)
P5270.08      Inmate Discipline and Special Housing Units (12/4/09)
P5370.11      Recreation Programs, Inmate (6/28/08)
P5800.16      Mail Management Manual (4/5/11)
P5800.15      Correctional Systems Manual (1/01/09)
P7331.04      Pretrial Inmates (1/31/03)

*Federal Regulations*

Federal Regulations cited in this Program Statement are contained in 28 CFR part 540.

*ACA Standards*

- 2nd Edition Standards for Administration of Correctional Agencies:  2-CO-5D-01
- 4th Edition Standards for Adult Correctional Institutions:  4-4266, 4-4275, 4-4279, 4-4487, 4-4488, 4-4489, 4-4491, 4-4492 and 4-4496
- 4th Edition Standards for Adult Local Detention Facilities:  4-ALDF-2A-60, 4-ALDF-6A-02, 4-ALDF-6A-04, 4-ALDF-5B-05, 4-ALDF-5B-06, 4-ALDF-5B-08 and 4-ALDF-5B-09

*Records Retention Requirements*

Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.