RECEIVED BY MAIL
APR 29 2020
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MINNESOTA

Lisa A. Biron, )
    Plaintiff )
)
)
v. ) Case No. 19-cv-2938 (SRN/LIB)
)
)
Kathleen Hawk Sawyer, et al., )
    Defendants )
)
)

Plaintiff's Response In Opposition To Defendants' Motion To Dismiss [DOC 47]

### Introduction

The defendants' Motion to Dismiss should be denied. As explained below, the defendants' lift of their contact restriction does not render Plaintiff's Complaint moot. Moreover, Plaintiff intends to amend her Complaint to include claims for damages, but awaits a decision on her and her daughter's motions for joinder in order to know how to proceed with the amendment. Further, Plaintiff still seeks the emergency relief requested in her Motion for Emergency Injunction/Temporary Restraining Order because the defendants remain in possession of her November 25, 2019-mail intended for her daughter that contains legal documents concerning this case.

### Background

Defendants Barnes and Hiller have blocked Plaintiff and her daughter's contact for more than two (2) years. The defendants' alleged justification for this block was their goal of deference to the intent of the sentencing court in Plaintiff's criminal case. The supervised release condition seized upon by the defendants to support their contact bar was a condition listed among other conditions



applicable only to minors. But Rachael and her mother are both adults. Therefore, to bolster their tenuous position that the condition was applicable to Rachael as an adult, the defendants needed more to support their warped interpretation.

Accordingly, the defendants claimed[1] to have sought guidance from the sentencing court. Said court, they claim, advised them that it was, indeed, that court's intent, behind the sentencing condition, to bar mother and daughter's contact with each other for life.[2] A remarkable claim, especially in light of the fact that this condition, which the sentencing court allegedly clarified for the defendants, is not the condition it actually imposed at sentencing. The condition as imposed by the court could not possibly be interpreted as applying to an adult, and did not even bar contact with Rachael as a minor (or with any minors) under proper supervision.

The defendants, Plaintiff discovered,[3] were relying on a scrivener's error in the written judgment. Committed to their allegiance-to-the-sentencing court-rationale[4] for the bar, and their rational based entirely on a fallacy, the defendants lifted their contact bar. But not until almost a whole month had passed. Upon her discovery of the true sentencing condition, Plaintiff made several requests by letter and emails for a conference call with opposing counsel to discuss settling the case. He is, evidently, unwilling to discuss the matter.

---

1 See Barnes' Decl. at ¶12 (DOC 32).
2 The defendants' allegation that the sentencing judge communicated ex parte his intent behind a condition he did not impose raises serious concerns of judicial misconduct. Wherefore, Plaintiff filed a complaint of judicial misconduct received at the First Circuit Court of Appeals on February 25, 2020. Plaintiff suggests it is more likely that the defendants committed perjury in an attempt to prevent her and her daughter's contact. Her amended complaint will seek damages for such malicious acts.
3 Plaintiff discovered the discrepancy while reading a portion of her sentencing transcript included as an exhibit to AUSA Tweeten's Declaration. (See DOC 34-1).
4 See Barnes' Decl. at ¶¶8&9 (DOC 32).

Plaintiff's Claims and Motions Are Not Moot

Plaintiff's Complaint brings claims for declaratory and injunctive relief against the defendants in their official capacity for violating her and her daughter's constitutional rights by precluding them from contact with each other. As explained above, after the defendants' sham-rationale for the contact bar was exposed, they lifted their contact restriction. The defendants refused to even discuss the possibility of a formal settlement. Consequently, Plaintiff will not voluntarily dismiss this action,[5] and the defendants' quasi-voluntary lift of the contact bar does not moot Plaintiff's claims.

It is well settled that mootness is not an issue where the voluntary cessation exception to the mootness doctrine applies. Lowry v. Watson Chapel School District, 540 F.3d 752, 761 n.8 (8th Cir. 2008). "[I]n general, a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Charleston Housing Authority v. United States Dept. of Agriculture, 419 F.3d 729, 740 (8th Cir. 2005). "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant ... free to return to his old ways." United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968). "Defendants who argue mootness due to changed circumstances based on their own behavior face a heavy burden." Charleston Housing Auth., 419 F.3d at 740. Defendants who argue that a case is moot must be able to demonstrate that "there is no reasonable expectation that the wrong will be repeated." Arkansas Medical Soc'y v. Reynolds, 6 F.3d 519, 529 (8th Cir. 1993).

---

[5] Ignoring Plaintiff's requests for a conference call, defendants instead mailed to her a Stipulation for Voluntary Dismissal for her signature. This prompted Plaintiff to once again send a request through Defendants Hiller and Barnes to set up a call to speak with opposing counsel. Plaintiff attempted to call AUSA Tweeten via the inmate telephone but his calls are answered by an automated system which does not allow her calls to go through.

In the present case, defendants cannot satisfy this burden. They voluntarily lifted the contact bar, and they could easily reinstate it. They make no argument to the contrary, and do not even mention the voluntary cessation exception to the mootness doctrine in their motion to dismiss. In fact, given the grammatical gymnastics (and remarkable claim of ex parte communications with the sentencing court) employed by the defendants to separate mother and daughter, it is very likely they would try a similar maneuver in the future—perhaps in barring Rachael from visiting with her mother—if their anti-family unconstitutional conduct went unchecked.

Further, as soon as this Court rules on the Motions for Joinder, the Plaintiff(s) will file (or move to file) an[6] amended complaint seeking damages against Defendants Hiller and Barnes in their individual capacities. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 371 (1982)(a claim for money damages does not depend on any threat of future harm and remains a live controversy).

Moreover, Plaintiff still requires the relief requested in her Motion for Emergency Injunction/Temporary Restraining Order (DOC 10). Plaintiff filed for this protection because the defendants intercepted and removed from the outgoing mail two (2) envelopes containing legal documents pertaining to this case. One envelope was addressed directly to Rachael. The other was addressed to Plaintiff's power of attorney, Michael Bonczar. The defendants remain in possession of this mail (even keeping the Plaintiff's postage affixed to the envelopes). Plaintiff requests that this Court order her mail returned to her, and order the defendants not to interfere with such mail in the future.

---

6 Plaintiff does not have the benefit of word processing and, with prison-COVID-19-time constraints, is trying to avoid drafting and filing multiple amended complaints (i.e., filing one now as the sole Plaintiff, then filing a second with her daughter as Co-Plaintiff). Once this Court decides if Rachael may join the case, Plaintiff or Plaintiffs will proceed accordingly.

WHEREFORE, Plaintiff requests this Honorable Court:

A. Deny defendants' Motion to Dismiss;

B. Rule on Plaintiff and her daughter's Motions for Joinder;

C. Order appropriate relief on Plaintiff's Motion for Emergency Injunction/Temporary Restraining Order; and

D. Grant such other relief as is deemed just and equitable.

Respectfully submitted

4/24/2020
Date

Lisa Biron # 12775-049
Federal Correctional Institution
P.O. Box 1731
Waseca, MN 56093

## Certification and Verification

I hereby certify that a copy of this Response was mailed to AUSA Andrew Tweeten on this date; and, I hereby swear, under penalty of perjury, that this Response was mailed to the District of Minnesota, postage paid, by depositing said mail in the inmate legal mail system on this date.

4/24/2020
Date

Lisa Biron